## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TAMARA LYNN ELROD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1171 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tamara Lynn Elrod brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on September 6, 2012 alleging a disability onset date of December 31, 2007, later amended to July 10, 2013. (Tr. 12, 35, 250, 269-70, 218-221, 224-230.)[2] The applications were denied initially and again upon reconsideration.

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 7.)

(*Id.* at 125-34, 137-45.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 146.) After a hearing, the ALJ determined that Plaintiff was not disabled. (*Id.* at 12-23.) The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] The ALJ determined at

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4),416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled

step one that Plaintiff had not engaged in substantial gainful activity since the July 2013 application date. (Tr. 14, 35, 250.) The ALJ next found the following severe impairments at step two: asthma, fibromyalgia, sleep disorder, sciatica, shoulder disorder, and affective disorder. (*Id.* at 14-15.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one listed in Appendix 1. (*Id.* at 15-16.) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform a reduced range of light work in that she is limited to

> occasionally climb, balance, stoop, kneel, crouch, and crawl. She can frequently perform grasping and fine manipulation. The claimant cannot reach above shoulder level with the left upper extremity. She must avoid temperature extremes, fumes, odors, dusts, poor ventilation, and hazards including heights and moving machinery. The claimant can understand, remember, and carry out routine instructions. She can tolerate only occasional interaction with the public.

(*Id.* at 16.) At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 21.) Last, at step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 21-22.) Consequently, the ALJ concluded that Plaintiff was not disabled.

## IV. ISSUES AND ANALYSIS

Plaintiff raises a number of issues in her brief. First, she contends that the ALJ erred

---

the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

in finding that Plaintiff has the physical and mental RFC to perform a reduced range of light work. (Docket Entry 11 at 9-12.) Second, Plaintiff asserts that the ALJ erred in failing to accord proper weight to the opinion evidence in the record. (*Id.* at 12-14.) Third, Plaintiff alleges that the ALJ failed to find her osteoarthritis as a severe impairment at Step 2 of the Sequential Evaluation Process ("SEP"). (*Id.* at 14-15.) Last, Plaintiff contends that the ALJ erred by failing to adequately address the impact of Plaintiff's obesity on her ability to perform work activities. (*Id.* at 15-16.) For the following reasons, these arguments lack merit.

## 1. The ALJ's RFC determination is Legally Correct and Supported by Substantial Evidence.

Plaintiff first contends that the ALJ's RFC determination is not supported by substantial evidence. (Docket Entry 11 at 9-11.) As explained below, the Court concludes that the ALJ did not materially err in the RFC determination, and therefore there was not a misapplication of the medical-vocational guidelines.

RFC measures the most a claimant can do despite any physical and mental limitations. *Hines*, 453 F.3d at 562; 20 C.F.R. §§ 404.1520, 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. *See Hines*, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1520, 416.945(b)-(e). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). *See* 20 C.F.R. §§ 404.1520, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. *See* 20 C.F.R. §§ 404.1520, 416.969.

An ALJ need not discuss every piece of evidence in making an RFC determination.

*See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395

F.3d 1206, 1211 (11th Cir. 2005)).   However, the ALJ "must build an accurate and logical

bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.

2000).   As to the role of the function-by-function analysis, "[t]he RFC assessment must first

identify the individual's functional limitations or restrictions and assess his or her work-related

abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms

of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."   SSR 96-

8p, 1996 WL 374184, at *1.

### A. The ALJ's physical RFC determination is supported by substantial evidence.

Here, the ALJ's conclusion that Plaintiff could perform a limited range of light work is

supported by substantial evidence for a number of reasons.   First, the medical evidence

supports the ALJ's RFC determination. For example, the ALJ considers Dr. Kola

Adekanmbi's, medical consultative evaluation report in April 2, 2013 that indicates Plaintiff

had a "normal gait, tenderness of the joints, pain with range of motion testing, and strong grip

strength."   (Tr. 18 referencing Tr. 975-78.)   The ALJ also notes Dr. Adekanmbi's stating

Plaintiff's ability "to sit, stand, and move around the examination room without much

difficulty."   (*Id.* at 18 referencing Tr. 975.)   The ALJ gave his opinion "great weight" and

Plaintiff has not challenged the ALJ's conclusion. (*Id.* at 19.) Beyond this the ALJ correctly

pointed out that in July 8, 2014, Plaintiff's phalen and tinel signs were negative and motor

strength was 5/5 in all four extremities.   (*Id.* at 17 referencing 1297.)

Second, the ALJ accurately pointed to Plaintiff's activities of daily living in support of

her physical RFC determination.   (*Id.* at 15.)   For example, the ALJ noted that Plaintiff

reported no problems in her personal care and further stated helping taking care of her mother's house and yard. (*Id.* at 15, 298-305.) In addition, Plaintiff indicated she prepares meals for her mother and does laundry. (*Id.*) The ALJ also accurately noted that a third party function report from October 9, 2012, indicated that Plaintiff continued to perform a wide number of daily activities. (*Id.* at 282, 289.) The ALJ found Plaintiff's limitations in this domain "mild" and the evidence the ALJ relied upon to make this supports her physical RFC determination findings for a reduced range of light work. This evidence supports a physical RFC for a reduced range of light work.

Plaintiff's arguments to the contrary are unpersuasive. In support of her contention that the ALJ erred in her physical RFC assessment, Plaintiff repeats her own subjective testimony from the administrative hearing and references a number of medical records. (Docket Entry 11 at 9-11 referencing Tr. 41, 43, 46-47, 48, 50-51, 813, 972-78, 1099.) Nevertheless, Plaintiff does not appear to specifically challenge the ALJ's credibility determination which was inconsistent with the medical evidence and the activities of daily living discussed above. Beyond this, the Court agrees with the Commissioner that Plaintiff's record citations fail to provide any objective evidence to support Plaintiff's allegations nor do they refute the ALJ's findings. (See Docket Entry 13 at 10-11.) For the following reasons, the ALJ's physical RFC determination is supported by substantial evidence.

## B. The ALJ's mental RFC determination is both legally correct and supported by substantial evidence.

Plaintiff asserts that the ALJ failed to accurately account for her mental limitations in concentration, persistence, and pace ("CPP"). (Docket Entry 11 at 11-12.) Specifically,

Plaintiff contends that the ALJ did not address her "ability to stay on task and work at a sufficient pace to perform substantial gainful employment." (*Id.* at 12.) This objection lacks merit as well.

In *Mascio*, the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining CPP. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, the ALJ determined at step three that the claimant had moderate limitations in CPP. (Tr. 15-16.) In support, the ALJ's assessment in its entirety was:

> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. The claimant reported she can pay attention for one hour. She indicated she follows written and spoken instructions very well. However, the claimant also reported she has problems with memory and concentration

7

(Exhibit 8E).

(*Id.* at 15 referencing Tr. 298-05.)

"Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D.Md. May 19, 2015) (unpublished). Here, in contrast to *Mascio*, the ALJ explained at considerable length why Plaintiff's moderate limitations in CPP were accounted for by the RFC finding stating that Plaintiff "can understand, remember, and carry out routine instructions[,]" and "can tolerate only occasional interaction with the public." (Tr. 16.)

Specifically, the ALJ first evaluated Plaintiff's mental impairments at step three to determine whether she met or medically equaled the requirements of a disabling impairment under the Listing of Impairments. (Tr. 15-16; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06.) In pertinent part, the ALJ determined that Plaintiff's affective disorder and sleep disorder did not meet or equal a listed impairment because, in part, her disorders resulted in only moderate difficulties in maintaining CPP. (Tr. at 15-16.) Nevertheless, the ALJ went on to provide additional explanation and support for her mental RFC determination.

First, the ALJ accurately pointed out that Plaintiff's mental health status had improved over time. For example, the ALJ explained that:

> As for her mental impairments, mental health treatment notes generally showed an improvement in the claimant's mental status examinations through 2013 and 2014. The claimant presented for an evaluation in June 2013 and was diagnosed with bipolar disorder, mood disorder, generalized anxiety disorder, alcohol

8

abuse, cocaine dependence, and borderline personality disorder. At that time, she was assessed a Global Assessment of Functioning (GAF) score of 42 (Exhibit 17F). Following that evaluation, the claimant's mood was variously normal, good, euthymic, and relaxed. She was noted to be making progress effectively using her coping skills. In August 2014, the claimant reported doing much better with a change in her medications and she continued to do well throughout the remainder of 2014. The most recent progress notes from January 2015 reflected a happy and tired mood with the claimant visibly more relaxed (Exhibits 6F, 10F, 17F, 25F, and 34F).

(Tr. 18, referencing 804-07, 993-96, 1060-85, 1221-41, 1324-28.) The Court concludes that

this is substantial evidence in support of the ALJ's mental RFC finding.

Second, the ALJ also accurately pointed to evidence demonstrating that Plaintiff could

perform a wide variety of activities of daily living and had no deficits in CPP beyond those set

forth in the RFC. Specifically, Plaintiff self-reported that she could perform her own

personal care and do her own laundry. (*Id.* at 15, 299-300.) Plaintiff also self-reported that

she prepared meals with her mother and helped her mother care for her house and yard. (*Id.*)

Additionally, Plaintiff further indicated that she could pay attention for one hour, and that she

understood written and spoken instructions "very well[.]" (*Id.* at 15 referencing 303.) A

third-party function report further indicated that Plaintiff could pay attention for several

hours. (*Id.* at 20 referencing 287.) The record also indicates that Plaintiff went outside

everyday alone; could shop for groceries, clothing and household goods; and regularly went to

church. (*Id.* at 15, 301-02.) Plaintiff could also pay her own bills, count change, handle a

savings account, and use a check book/money order. (*Id.* at 301.) Plaintiff also self-

reported that she finished what she started and spent time with others daily. (*Id.* at 302-03.)

Plaintiff's assertions of disabling limitations in CPP are inconsistent with this evidence.

9

Third, the only medical evidence that Plaintiff points to suggesting that she might have additional limitations in CPP—part of Dr. Bradford's medical opinion—was specifically discounted by the ALJ. (Docket Entry 11 at 12-13.) As discussed below, the ALJ's decision to discount Dr. Bradford on this point was supported by substantial evidence. Consequently, unlike the claimant in *Mascio*, there is no credible evidence here that Plaintiff suffered from limitations in CPP that require additional limitations in the RFC. Consequently, Plaintiff's contention that remand for additional explanation is required by *Mascio* is without merit.

## 2. The ALJ's assessment of the opinion evidence is legally correct and supported by substantial evidence.

Next, Plaintiff argues that the ALJ failed to accord appropriate weight to the opinion evidence in the record. (Docket Entry 11 at 12-14.) More specifically, Plaintiff asserts that (1) the ALJ failed to accord proper weight to the opinion of psychological consultative examiner, Dr. Dan Bradford; (2) the ALJ failed to address Plaintiff's Global Assessment of Functioning ("GAF") scores; and (3) the ALJ failed to give proper weight to Plaintiff's Medicaid disability determination. (*Id.*) Again, Plaintiff's arguments fail.

### A. Dr. Bradford's Opinion

Plaintiff argues that the ALJ failed to give proper weight to Dr. Bradford's psychological consultative opinion. (*Id.* at 12-13 referencing Tr. 19.) The "treating physician rule," 20 C.F.R. § 404.1527(c)(2), generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence . . . ."

20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 416.927(c)(2).[4]     An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it.     20 C.F.R § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6).     These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.     20 C.F.R § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6).

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings as well as consistent with the other substantial evidence in the case record. 20 C.F.R § 404.1527(c)(2)-(4); *see also* 20 C.F.R. § 416.927(c)(2)-(4).     "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."     *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). As for a claimant's subjective report of bodily limitations, the claimant's report will be rejected unless supported by the treating physician's record, such as notes and medical tests, and other objective medical evidence.     *Id.*

Here, the ALJ gave Dr. Bradford's opinion "some weight" reasoning that:

> Dr. Bradford opined the claimant would have a moderate

---

[4] SSR 96-2p provides that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."     SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996).

difficulty performing work activities on a consistent basis, marked difficulty interacting with coworkers and the public, moderate difficulty interacting and accepting instructions from supervisors, and marked difficulty dealing with the stress of a competitive work environment (Exhibit 9F). Although this opinion is based on [Dr.] Bradford's evaluation of the claimant, he did not have the benefit of reviewing the more recent treatment notes, which document improvement in the claimant's symptoms with regular treatment and a change in her psychiatric medications[.]

(Tr. 19 referencing Tr. 982-89.)

A review of the record indicates that the ALJ provided substantial evidence for her findings. As the ALJ noted, Dr. Bradford's April 13, 2013, one-time examination was before much of Plaintiff's recent mental health treatment. Overall, Plaintiff had improvements in her mental health status from 2013 to 2014. (*See* Tr. 1060-66, 1221, 1224, 1236-39, 1324-28.) For example, on August 29, 2013, Plaintiff denied any suicidal or homicidal thoughts. (*Id.* at 1063.) In November 2013, treatment notes showed Plaintiff having a hopeful mood and demonstrating full affect. (*Id.* at 1239.) Her therapist indicated that Plaintiff was "visibly more relaxed," and making good progress toward her treatment goals. (*Id.*) Additionally, in January 2014, Plaintiff reported a happy mood and feelings of "joy and relief." (*Id.* at 1236-37.) Later in August 2014, Plaintiff reported that she was doing "much better" and was tolerating changes in her medication well. (*Id.* at 1221.) She was alert and cooperative, her mood was euthymic, her cognition and thought process was intact, and she had improved judgment. (*Id.*) This evidence supports the ALJ's decision to give Dr. Bradford's opinion some weight as it was inconsistent with subsequent treatment notes displaying improvements in Plaintiff's mental status.

Plaintiff's argument to the contrary is unpersuasive. Plaintiff relies upon *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016), to argue that the ALJ's explanation of Dr. Bradford's opinion is "precisely the kind of conclusory analysis that . . . did not allow for meaningful substantial evidence review." (Docket Entry 11 at 12.) Plaintiff's reliance upon *Monroe*, however, is misplaced.

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).' " *Monroe*, 826 F.3d at 189 (internal quotations omitted). The Fourth Circuit held that " 'a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Id.* at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

This case is distinguishable from *Monroe* because the ALJ provided meaningful discussion as to why Dr. Bradford's opinion received "some weight." (Tr. 19.) Having concluded that Dr. Bradford was not afforded the opportunity to review "more recent treatment notes, which document improvement in [Plaintiff's] symptoms," (*id.*), the ALJ's assignment of weight is supported by substantial evidence. Thus, Plaintiff's argument fails.

### B. Plaintiff's GAF Scores

Next, Plaintiff argues that the ALJ erred "in failing to specifically address the significance" of Plaintiff's GAF scores. (Docket Entry 11 at 13.) "A GAF score is intended to be used in treatment decision and may have little to no bearing on . . . occupational

functioning." *Love v. Astrue*, No. 3:11–CV–014, 2011 WL 4899989, at *4 (W.D.N.C. Sept. 6, 2011) (unpublished), *adopted* 2011 WL 4899984 (W.D.N.C. Oct. 14, 2011). Consequently, "it is unsurprising that courts have concluded that 'the failure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination.' " *Clemins v. Astrue*, No. 5:13–CV–00047, 2014 WL 4093424, at *1 (W.D.Va. Aug. 18, 2014) (unpublished) (*quoting Paris v. Colvin*, No. 7:12–CV–00596, 2014 WL 534057, at *6 (W.D.Va. Feb. 10, 2014); *Love*, 2011 WL 4899989, at *5 (quotation marks omitted). Additionally, reversal on the grounds that the ALJ failed to consider a GAF score "is particularly inappropriate 'where the ALJ fully evaluated the records and treatment notes upon which the GAF scores were based.' " *Id.* (*quoting Paris*, 2014 WL 534057, at *6).

Here, the ALJ considered Plaintiff's entire record and specifically referenced two relevant GAF scores and properly evaluated the records upon which the GAF scores were based. (Tr. 18-19.) Contrary to Plaintiff's argument, "an ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed into the Administrative Record." *Long v. Colvin*, No. 1:13CV0659, 2015 WL 1312919, at *8 (M.D.N.C. Mar. 24, 2015) (unpublished), *report and recommendation adopted*, No. 1:13CV659, 2015 WL 1646985 (M.D.N.C. Apr. 14, 2015) (citation omitted). Additionally, "Plaintiff does not explain how the ALJ's further consideration of [her] GAF scores would have altered the mental RFC in this case." *Williams v. Colvin*, No. 1:13CV236, 2015 WL 6828114, at *5 (M.D.N.C. Nov. 6, 2015) (unpublished) (emphasis in original). The Court notes that the other GAF scores in the record cited by Plaintiff (Tr. 362, 373, 377, 386, 423) reflect a timeframe well before her alleged onset date, which brings into question the degree of

relevancy such scores may have upon Plaintiff's disability determination. *See Duncan v. Colvin*, No. CIV.A. 14-1187-JWL, 2015 WL 1863591, at *4 (D. Kan. Apr. 23, 2015) ("Two of the GAF scores to which [p]laintiff appeals were assigned more than nine years before [p]laintiff submitted his SSI application at issue here," thus "[they are not relevant to a determination whether Plaintiff is disabled."); *Sirio v. Colvin*, No. 12-CV-02578-MSK, 2013 WL 4510324, at *7 (D. Colo. Aug. 24, 2013) ("GAF scores assess an individual's level of functioning at a specific point time. A 'snapshot' dated six months before the requested disability period was minimally relevant to the ALJ's disability determination."). As the ALJ did not err in her consideration of Plaintiff's GAF scores, this argument too fails.

## C. Plaintiff's the Medicaid Disability Determination.

Plaintiff next contends that the ALJ erred by not giving proper weight to her Medicaid disability determination. (Docket Entry 11 at 14 referencing Tr. 1086-89.) In support, Plaintiff argues that "[t]he North Carolina Department of Health and Human Services ("NCDHHS") determination should be considered relevant" to her disability determination. (*Id.*)

More specifically, SSR 06-03p provides in pertinent part that:

> evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered. . . .

> [W]e are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision

15

for hearing cases and in the case record for initial and reconsideration cases.

SSR 06-03p, *Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939, at *6-7 (Aug. 9, 2006).

In interpreting SSR 06-03p, the Fourth Circuit has considered "the precise weight that the SSA must afford to a VA disability rating." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012). In addressing this question, the Fourth Circuit noted that, "the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* It reasoned further that "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.* (quotations omitted).

The Fourth Circuit concluded that "[b]ecause the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Thus, "in making a disability determination, the SSA [Social Security Administration] must give substantial weight to a VA disability rating." *Id.* "However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation

is appropriate." *Id.* *Bird* has subsequently been interpreted to include not only VA awards but Medicaid awards as well.[5]

Consequently, in order to satisfy SSR 06-03p and *Bird* an ALJ must meaningfully articulate how substantial evidence supports a conclusion that the disability determination of another agency is entitled to limited or no weight. *See, e.g., Bird,* 699 F.3d at 343; *Adams v. Colvin,* No. 5:14-CV-689-KS, 2016 WL 697138, *4 (E.D.N.C. February 22, 2016) (unpublished); *Hildreth v. Colvin,* No. 1:14CV660, 2015 WL 5577430, *4 (M.D.N.C. September 22, 2015) (unpublished).

Here, the NCDHHS concluded that due to Plaintiff's "severe impairments of [m]ajor depressive disorder, bipolar disorder, and personality disorder," her "ability to perform work at all exertional levels ha[d] been compromised . . . ." such that a finding of disabled was appropriate. (Tr. 1087-88.)   In her decision, the ALJ specifically recognized and discussed Plaintiff's Medicaid disability determination:

> I also considered the decision of the [NCDHHS] from October 2013.   In that decision, the claimant was found disabled and therefore eligible for Medicaid due to an inability to perform basic work-related activities under SSRs 85-15 and 96-9p (Exhibit 18F).   This opinion is given little weight because the more recent treatment notes document an improvement in the claimant's mental status with regular treatment and a change to her psychiatric medications, as [previously] discussed [in the decision].

[5] *See Perry v. Berryhill,* No. 2:16-CV-00058-D, 2017 WL 3044573, at *4 (E.D.N.C. June 28, 2017) (unpublished) ("Subsequent case law within the Fourth Circuit has explicitly extended the holding in *Bird* to Medicaid decisions, noting that both the Medicaid and VA disability programs share markedly similar standards and requirements with the DIB and SSI programs at issue here."), *recommendation adopted,* 2017 WL 3038222 (E.D.N.C. July 17, 2017) (unpublished).

(Tr. 20 referencing 1086-89.)

Here, the ALJ's analysis is adequate. The ALJ did not just merely mention the agency determination, but also considered it. She explained that the agency's decision was afforded little weight because Plaintiff's mental status had since improved. (*See* Tr. 20.) Since the ALJ's explanation is adequate and supported by substantial evidence, this argument too lacks merit. *See Gillis v. Colvin*, No. 1:14CV426, 2015 WL 4644777, at *5 (M.D.N.C. Aug. 4, 2015) (unpublished) (concluding that the ALJ's "handling of the VA determination is supported by substantial evidence.").

### 3. The ALJ's Assessment of Plaintiff's Osteoarthritis is Legally Correct and Supported by Substantial Evidence.

Plaintiff next contends that the ALJ erred by not addressing her osteoarthritis[6] in the Step 2 discussion of severe impairments or anywhere else in the decision. (Docket Entry 11 at 14-15.) In regards to Step 2, the ALJ has the duty "to determine which impairments [P]laintiff has and whether the impairments are severe or non-severe." *Coakley v. Colvin*, 8:15-CV-2788-MGL-JDA, 2016 WL 7364643, at *9 (D.S.C. Nov. 29, 2016), *report and recommendation adopted*, CV81502788MGLJDA, 2016 WL 7338716 (D.S.C. Dec. 19, 2016); *See also Solesbee v. Astrue*, C/A No. 2:10-1882-RMG, 2011 WL 5101531, at *4–5 (D.S.C. Oct. 25, 2011). As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to

---

[6] Osteoarthritis is defined as "a noninflammatory degenerative joint disease seen mainly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity." Dorland's Illustrated Medical Dictionary 1333 (30th Ed.2003). *Daniel v. Astrue*, CIV. A. 6:07CV020, 2008 WL 2901342, at *7 (W.D. Va. July 21, 2008), *report and recommendation adopted*, CIV.6:07CV00020, 2008 WL 3201231 (W.D. Va. Aug. 7, 2008)

discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step [2] is harmless." *McClain v. Colvin*, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).

Further, the ALJ's determination of whether an impairment is severe is a threshold determination. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). "[S]evere" is a term of art, which means the impairment at issue "significantly limits [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c), 416.967. Social Security Ruling ("SSR") 96–8p exemplifies that a "severe" impairment "has more than a minimal effect on Plaintiff's ability to do basic work activities." SSR 96–8p. She bears the burden of proving an impairment is "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146, (1987).

Here, Plaintiff argues osteoarthritis affected her ability to perform certain kinds of work. (Docket Entry 11 at 14-15.) In support, Plaintiff provides as evidence her self-reported symptoms contained within the record. (*Id.*) Further, at the hearing Plaintiff discussed with the VE that:

> Physically I can't lift my patients any more. It's just too much on my back, my hips. I have trouble walking and lifting for extended periods of time. My hands will not grip any more. I won't even use a regular glass glass [sic] to drink out of because my hands will go numb and I'll drop whatever's in them.

(Tr. 41.)

The ALJ points to Plaintiff's activities of daily living. For example, the ALJ points to Plaintiff's self-report that she could perform her own personal care and do her own laundry. (*Id.* at 15, 299-300.) Plaintiff also self-reported that she prepared meals with her mother and helped her mother care for her house and yard. (*Id.*)

19

Second, in terms of Plaintiff's osteoarthritis in her shoulder, the ALJ points to Plaintiff's 5/5 motor strength and sensation being grossly intact. (*Id.* at 17, 874.) In addition, the ALJ points to Plaintiff's stable left shoulder with slow but steady improvement after Plaintiff's physical therapy. (*Id.* at 17, 1107, 1110-11.)

Because the evidence of the record suggests that Plaintiff's osteoarthritis does not have more "than a minimal effect on [her] ability to do basic work activities [,]" the ALJ only has the duty to discuss medical evidence regarding Plaintiff's osteoarthritis. *McClain*, 2014 WL 2167832, at *4. However, a review of the ALJ's decision shows that the ALJ discussed the medical evidence regarding Plaintiff's osteoarthritis by stating:

> As for her pain complaints, the claimant complained of pain and swelling in her hands and lower back pain in 2013. Physical examination of the back revealed moderate tenderness and painful range of motion. X-rays of the lumbar spine demonstrated bilateral L4 spondylosis with L4-L5 spondylolisthesis and mild lower lumbar facet arthropathy. The claimant was diagnosed with an acute exacerbation of lower back pain (Exhibit 7F). Physical examination of her hands showed swelling and tenderness but no synovitis, warmth, or effusion, intact range of motion, and normal sensation. An ultrasound of the bilateral upper extremities was normal. Phalen and Tinel signs were negative and motor strength was 5/5 in all four extremities. Diagnoses included joint effusion of the hands, osteoarthritis, and inflammatory arthropathy (Exhibits 7F, 22F, 29F, and 33F).

(Tr. 18 referencing Tr. 874, 1200-08, 1292-99, 1321-33.) In conclusion, the ALJ states that due to Plaintiff's osteoarthritis, she is limited to "work at the light exertional level with postural limitations and only frequent grasping and fine manipulation." (*Id.*) Although the ALJ does not mention in Step 2 that Plaintiff's osteoarthritis is a severe impairment, the ALJ correctly considered it. In any event, failure to do so was harmless error. *McClain*, 2014 WL

2167832, at *4.  Thus, Plaintiff's argument fails.

## 4. The ALJ's Evaluation of Plaintiff's Obesity is Legally Correct.

Next, Plaintiff argues that the ALJ failed to discuss her "diagnosis of obesity and its effects on her ability to work." (Docket Entry 11 at 15-16.) More specifically, Plaintiff contends "nowhere in the decision did [the ALJ] specifically analyze the impact" of obesity on Plaintiff. (*Id.*)

The determination process for obesity requires an ALJ to consider impairments about which the ALJ receives evidence. *Edge v. Colvin*, 1:10CV493, 2013 WL 1621993, at *4 (M.D.N.C. Apr. 15, 2013), *report and recommendation adopted*, 1:10-CV-493, 2013 WL 4671649 (M.D.N.C. Aug. 30, 2013). ("We will consider only impairment(s) ... about which we receive evidence."). Yet, an ALJ's failure to consider an impairment about which a claimant provided evidence does not necessarily require a remand, if remand would not affect the outcome of the action. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (concluding that "remand [to consider plaintiff's obesity] is not required here because it would not affect the outcome of the case"); *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006) (concluding that "a failure to explicitly consider the effects of obesity may be harmless error").

Contrary to Plaintiff's argument, the ALJ thoroughly discussed Plaintiff's obesity, by stating:

> Further exacerbating the claimant's physical impairments is her obesity. Treatment notes from April 2014 documented a height of 65 inches and weight of approximately 210 pounds, which resulted in a body mass index (BMI) of 34.9 (Exhibit 19F). Social Security Ruling 02-1p requires me to consider obesity when determining whether claimants have medically determinable impairments that are severe, when determining

whether those impairments meet or equal any listing, and finally when determining the residual functional capacity. In particular, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. These considerations have been taken into account in reaching the conclusions contained in this decision.

(Tr. 18.) Second, Plaintiff refers to no limitations related to obesity for which the ALJ failed to account for with a reduced range of light work. *Clark v. Astrue*, 8:11-CV-02585-MGL, 2012 WL 6849874, at *10 (D.S.C. Dec. 14, 2012), *report and recommendation adopted*, CIV.A. 8:11-2585-MGL, 2013 WL 145037 (D.S.C. Jan. 14, 2013) ("Plaintiff has offered no argument as to what additional limitations she suffers as a result of her obesity beyond those that the ALJ acknowledged.")

Moreover, the ALJ's RFC determination is supported by reports of physicians referencing Plaintiff's obesity, but none of them explaining or acknowledging any functional limitations as a result of Plaintiff's weight. For example, the ALJ points to Dr. Adekanmbi's records indicating that Plaintiff was obese by stating Plaintiff was 65 inches in height and 201 pounds in weight, but Dr. Adekanmbi never referenced a limitation based on his finding of obesity. (Tr. 18, 974.) However, Dr. Adekanmbi found Plaintiff's gait normal, and further noted that she could sit, stand, and move around the examination room without difficulty. (*Id.* at 975.) The ALJ also pointed to the records showing Plaintiff having no muscle atrophy, and the ability to raise her arms above her head without difficulty. (*Id.*) The ALJ gave Dr. Adekanmbi "great weight."

Additionally, the ALJ duly noted state agency medical consultant Dr. Stevin Levin's findings. The ALJ pointed to Dr. Levin's report of Plaintiff's ability to perform medium

work with the ability to "sit for up to 6 hours total in an 8 hour work day, and stand and/or walk for up to 6 hours total in an 8 hour workday." (*Id.* at 19, 111-12.) Dr. Levin did not refer to any limitations Plaintiff would suffer from due to her obesity. The ALJ afforded Dr. Levin "some weight."

Plaintiff's weight was also noted in several medical documents which the ALJ referenced in his findings. (*See, e.g.*, Tr. 841 (weight at 195); Tr. 1201 (weight is 216.8); Tr. 1322 (weight is 218); Tr. 1006 (weight at 201); Tr. 762 (weight 265); Tr. 796 (weight at 265)). All of these reports throughout Plaintiff's medical records recognize Plaintiff's obesity or weight, but no report expressed concerns of great limitations as a result of her weight. Certainly Plaintiff's treating physician would have further addressed the issue of obesity if he believed it to cause significant limitations for her. After reviewing the findings in this case, the Court concludes that the ALJ supported her finding with substantial evidence. Thus, this argument too fails.

## V. CONCLUSION

In light of the above, the Court **RECOMMNEDS** that Plaintiff's motion for judgment on the pleadings (Docket Entry 10) be **DENIED** and that Defendant's motion for judgment on the pleadings be **GRANTED**. (Docket Entry 12.)

_____
Joe L. Webster
United States Magistrate Judge

September 7, 2017
Durham, North Carolina

23