IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TAMARA LYNN ELROD,                    )
                                      )
                Plaintiff,            )
        v.                            )
                                      )
NANCY BARRYHILL,[1]                   )          1:16CV1171
Acting Commissioner of Social         )
Security,                             )
                                      )
                Defendant.            )


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for review of the Magistrate Judge's

Memorandum Opinion and Recommendation ("Recommendation") filed on August

25, 2016, in accordance with 28 U.S.C. § 636(b). [Doc. #14.] The Magistrate

Judge recommends affirming the Commissioner of Social Security's

("Commissioner") decision denying Plaintiff Tamara Lynn Elrod's claims for

disability insurance benefits, denying Ms. Elrod's Motion for Judgment on the

Pleadings [Doc. #10], and granting Defendant's Motion for Judgment on the

Pleadings [Doc. #12]. After the Recommendation was filed, notice was served on

the parties pursuant to 28 U.S.C. § 636. [Doc. #14.] Ms. Elrod timely filed

objections [Doc. #16] to the Recommendation obligating this Court to undertake a

---

[1] Nancy Berryhill is now the Acting Commissioner of Social Security.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill
should be substituted for Carolyn W. Colvin as Defendant in this suit. No further
action need be taken to continue this suit by reason of the last sentence of Section
205(g) of the Act, 42 U.S.C. § 405(g).

de novo review of those portions of the Recommendation to which objections were made. 28 U.S.C. § 636(b); <u>Orpiano v. Johnson</u>, 687 F.2d 44, 48 (4th Cir. 1982). After conducting such review, this Court finds that the Magistrate Judge correctly found that substantial evidence supported the Commissioner's decision, and as a result, adopts the Recommendation.

## I.

Ms. Elrod argues that the Magistrate Judge erred in recommending the adoption of: (1) the weight the Administrative Law Judge ("ALJ") accorded to Ms. Elrod's prior Medicaid award, (2) the weight the ALJ gave to Dr. Daniel Bradford's consultative opinion, (3) the ALJ's failure to address Ms. Elrod's GAF[2] scores with specificity, (4) the ALJ's determination that Ms. Elrod can perform a range of light work, and (5) the ALJ's failure to account properly for Ms. Elrod's limitations in concentration, persistence, and pace ("CPP") in the residual functional capacity ("RFC"). (Pl.'s Objs. to R. & R. "Pl.'s Objs." [Doc. #16].)

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "[A] reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application

---

[2] Global Assessment of Functioning. A GAF score is a number between 1 and 100 that measures "the clinician's judgment of the individual's overall level of functioning." <u>See</u> <u>Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders</u>, 32-34 (Text Revision 4th ed. 2000) ("DSM-IV").

of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted). "In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

## A.

Ms. Elrod first objects to the Magistrate Judge's assessment of the weight the ALJ gave to the North Carolina Department of Health & Human Services ("NCDHHS") Medicaid determination that Ms. Elrod was disabled. On October 4, 2013, the NCDHHS found Ms. Elrod was disabled based on her severe impairments of major depressive disorder, bipolar disorder, and personality disorder. The

NCDHHS also found Ms. Elrod suffered from impairments of rheumatoid arthritis and torn rotator cuff, though not severe. (Tr. at 1086-88.) Under 20 C.F.R. § 404.1504, a decision by any governmental or nongovernmental agency about whether or not a claimant is disabled is not binding on the Social Security Administration. But Social Security Ruling 06-03p provides that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). The ruling explains that "[t]hese decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules." Id. at *7. In addressing this issue with regard to a prior United States Department of Veterans Affairs ("VA") disability determination, the Fourth Circuit Court of Appeals held that an ALJ must give weight and consideration to a prior disability determination. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012) ("[W]e hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating.") However, the ALJ has discretion in how much weight to give a prior determination.

> [B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

4

Id. "Subsequent case law within the Fourth Circuit has explicitly extended the holding in Bird to Medicaid decisions." Perry v. Berryhill, No. 2:16-CV-00058-D, 2017 WL 3044573, at *4 (E.D.N.C. June 28, 2017).

Ms. Elrod asserts that the NCDHHS disability determination was based on "rheumatoid arthritis, depression, personality disorder, torn rotator cuff, and bipolar disorder prevent[ing] her from being able to work at any exertional level or perform even unskilled work." (Pl.'s Objs. [Doc. #16] at 3.) However, the record shows that the NCDHHS decision to approve Ms. Elrod for Medicaid was based on the severe mental impairments of major depressive disorder, bipolar disorder, and personality disorder and not her physical impairments. (Tr. at 1086-88.) Furthermore, the ALJ did expressly consider the NCDHHS's opinion with regard to Ms. Elrod's mental health issues. (Id. at 20.) The ALJ then explained that she gave the opinion "little weight" because "more recent treatment notes document an improvement in the claimant's mental status with regular treatment and a change to her psychiatric medications." (Id.) The ALJ refers to changes in Ms. Elrod's psychiatric medicine since the NCDHHS's disability determination in October 2013. (Id.) Specifically, with regard to her mental impairments, the ALJ wrote,

> In August 2014, the claimant reported doing much better with a change in her medications and she continued to do well throughout the remainder of 2014. The most recent progress notes from January 2015 reflected a happy and tired mood with the claimant visibly more relaxed.

(Id. at 18.)  Because, contrary to Ms. Elrod's assertions, the ALJ did explain why she did not give great weight to the NCDHHS's previous determination, this objection is overruled.

## B.

Ms. Elrod's next objection is that the Magistrate Judge erred in recommending the acceptance of the ALJ's "conclusory analysis" of Dr. Daniel Bradford's consultative opinion.  (Pl.'s Objs. at 4.)  Ms. Elrod argues that the ALJ's explanation of the weight accorded to Dr. Bradford's opinion does not allow for "meaningful substantial evidence review" as required by the Fourth Circuit Court of Appeals in Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016), because the ALJ "provided no explanation of her conclusory statement that Ms. Elrod's condition had improved." (Pl's. Objs. at 4.)  According to Ms. Elrod,

> Dr. Bradford opined that Ms. Elrod would have marked difficulty dealing with the stress of a competitive work environment and interacting with coworkers and the public, as well as moderate difficulty performing work activities on a consistent basis and understanding and accepting instructions from supervisors. (Tr. at 987-88.)

Id.  In Monroe, the Fourth Circuit held,

> [R]egarding Monroe's mental impairments, the ALJ noted that Dr. Link and Mr. Booth's report concluded that Monroe "appeared marginally low, in terms of mastering basic directions or procedures reliably and safely" and that his "ability to sustain attention, efforts, and constructive interpersonal relationships over time in goal-oriented activities was moderately low." The ALJ stated that he gave that opinion only "limited weight" based on a determination that "the objective evidence or the claimant's treatment history did not support the consultative examiner's findings." However, the ALJ did not specify what "objective evidence" or what aspects of Monroe's

6

"treatment history" he was referring to. As such, the analysis is incomplete and precludes meaningful review.

826 F.3d at 190–91.

The present case is distinguishable from <u>Monroe</u>, because the ALJ did specify which evidence she found inconsistent when she explained the weight she gave Dr. Bradford's opinion. As noted by the ALJ, Dr. Bradford's examination of Ms. Elrod occurred on April 13, 2013. (Tr. at 18-19 (referencing Ex. 9F).) At that appointment, Dr. Bradford wrote that Ms. Elrod reported feeling depressed "about three of seven days a week with poor concentration [and] poor appetite." (<u>Id.</u> at 983.) However, as noted by the ALJ, subsequent treatment notes reflect Ms. Elrod "reported doing much better with a change in her medications" and "continued to do well throughout the remainder of 2014." (<u>Id.</u> at 18 (referencing Exs. 6F, 10F, 25F, and 34F).)

A review of the record indicates that the ALJ's decision was supported by substantial evidence. For example, at a visit to Daymark Recovery Services ("Daymark") on August 25, 2014, Ms. Elrod reported that she was doing "much better" and was tolerating changes in her medication well. (<u>Id.</u> at 1221.) She reported that "her mood has been stable" and that "she has been sleeping well." (<u>Id.</u>) At that appointment, the clinician, Angela Louie, reported that Ms. Elrod was alert and cooperative, her cognition and thought process were intact, and she had improved judgment. (<u>Id.</u>) At her November 24, 2014, Daymark appointment, Ms. Elrod reported "doing pretty well" except for some sleep issues. (<u>Id.</u> at 1326.) At this appointment, Angela Louie reported that Ms. Elrod was alert and cooperative,

her mood and affect were normal, and she did not show any signs of psychosis. (Id.) Further, Ms. Elrod did not report any suicidal thoughts at these appointments. (Id.) This evidence supports the ALJ's decision to give Dr. Bradford's opinion the weight she did as it was inconsistent with subsequent treatment notes displaying improvements in Ms. Elrod's mental status. As the ALJ's opinion is supported by substantial evidence, this objection is overruled.

### C.

In her final objection to the weight accorded by the ALJ to the opinion evidence, Ms. Elrod argues that the Magistrate Judge erred when recommending the acceptance of the ALJ's failure "to specifically address the significance of all of Ms. Elrod's GAF scores." (Pl's. Objs. at 5.) According to Ms. Elrod, she was diagnosed with GAF scores of 42 and 45 during the relevant time period, GAF scores constitute accepted medical evidence, and GAF scores must be addressed by the ALJ in making a disability determination. (Id.) However, neither the law nor the record support Ms. Elrod's argument. The ALJ is not required to recite every GAF score. See e.g., Sizemore v. Berryhill, 878 F.3d 72, 82 (4th Cir. 2017) ("[W]hile the ALJ did not expressly recite each of the various GAF scores given . . . , the ALJ's decision demonstrates a careful consideration of the entire record, including the reasons supporting the GAF scores that were given.") Here, the ALJ discussed both GAF scores in the context of when they were assessed and the circumstances at that time. (Tr. at 18-19.) Furthermore, the ALJ included a footnote that read,

> According to the Diagnostic and Statistical Manual of Mental
> Disorders, Fourth Edition (DSM-IV), a GAF score is intended to be a
> one-time snap shot and it is not subject to empirical verification such
> as IQ scores. Rather, GAF scores are situational and reflect the
> personalized assessment of the practitioner on the assessment date
> and include matters outside of the actual psychological functioning
> including legal, financial, and employment functioning. Accordingly,
> GAF scores should not be relied upon as an indication of claimant's
> long term psychological functioning since the score is intended only to
> reflect the evaluator's subjective assessment of a patient's
> psychological functioning at a specific period of time.

(Tr. at 18, n.1.) The record supports a finding that the ALJ did take the GAF

scores into consideration in her analysis. Thus, this objection is overruled.

### D.

The final two objections to the Recommendation regard accepting what Ms.

Elrod argues as the ALJ's error in formulating her RFC. (Pl.'s Objs. at 6-10.)

Specifically, Ms. Elrod states:

> Remand is required in this case because a proper categorization of Ms.
> Elrod's exertional limitations to a maximum of sedentary work, which
> is supported by the medical evidence of record, requires a finding of
> disabled under Rule 201.12 of the Medical-Vocational Guidelines.
> Furthermore, ALJ Scully-Hayes failed to follow Fourth Circuit
> precedent in failing to include limitations in Ms. Elrod's RFC based on
> her limitations in concentration, persistence, or pace.

(Id. at 10.) With regard to the RFC, Ms. Elrod first argues that the ALJ's

determination that she can perform a reduced range of light work is not based on

substantial evidence, and that, contrary to the ALJ's findings, she is unable to

work at any exertional level. (Id. at 6-9.)

The evidence to which Ms. Elrod refers in support of this objection is her

own testimony. (See id. at 7-8.) She argues that her "credible testimony serves

to illustrate that she is unable to work due to chronic severe pain and psychiatric symptoms." (Id. at 7.) At the January 23, 2015, hearing held before the ALJ, when asked why she believed she could not work, Ms. Elrod testified that,

> Physically I can't lift my patients any more. It's just too much on my back, my hips. I have trouble walking and lifting for extended periods of time. My hands will not grip any more. I won't even use a regular glass glass [sic] to drink out of because my hands will go numb and I'll drop whatever's in them. . . . Mentally I'm overstressed, I have anxiety. . . . I can't deal with the patients any more.

(Tr. at 41.) She also described her "frozen shoulder" of which she did not have full use. (Id. at 43.) Ms. Elrod further testified that she is both bipolar and manic/depressive, but that she takes her medications regularly for those disorders. (Id. at 41-42.) She described depression symptoms and that she tried to commit suicide several times. (Id. at 46-47.) She testified that there are days that she "just go[es] into a deep, dark hole." (Id. at 46.)

When the ALJ asked her about sleep, Ms. Elrod testified that she is an insomniac and only sleeps "three good solid hours" per night. (Id. at 47.) She then furthered described her days as "ninety percent of the day you can find me curled up in my bedroom." (Id.) When asked, Ms. Elrod testified that she can help a little around the house, can cook and feed herself, and can grocery shop if she rides in a cart. (Id. at 48.) She does her own laundry weekly and occasionally goes to church. (Id. at 48-49.)

However, the ALJ articulated why she did not find Ms. Elrod entirely credible. "After careful consideration of the evidence, I find that the claimant's

medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . ." (Tr. at 19.)  The ALJ then goes into great detail throughout the report to illustrate inconsistencies with Ms. Elrod's testimony and the medical record.  With regard to Ms. Elrod's physical limitations, the ALJ cites to Dr. Kola Adekanmbi, who recorded that Ms. Elrod "was able to move around the room without difficulty" and sit and stand easily during their visit. (Id. at 18-19 (referencing Ex. 8F).)  Dr. Adekanmbi's report was given great weight because it is based on his evaluation of Ms. Elrod.  (Id. at 19.)  The ALJ also refers to the treatment record of Tiffany Boan, NP.  These treatment records from May 2014 indicate that Ms. Elrod's complaints of asthma, insomnia, and migraines were all resolved. (Ex. 12F at 15.) Further, more treatment records from Ms. Boan, dated November 25, 2014, indicate that Ms. Elrod was suffering no joint pain, no muscle pain, and no joint swelling at that visit. (Ex. 30F at 1.)  Finally, as previously explained, Ms. Elrod's testimony regarding her mental impairments is inconsistent with her medical records.  Because the ALJ explained the weight accorded to Ms. Elrod's testimony and self-reporting and cited contrary evidence from the record to support her findings, her opinion is supported by substantial evidence, and this objection is overruled.

**E.**

Ms. Elrod's final objection is to the Magistrate Judge's recommended acceptance of the ALJ's RFC analysis because it failed to fully and accurately account for her mental limitations in CPP. Ms. Elrod cites to the Fourth Circuit Court of Appeals decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), in support of her assertion that remand is required where the ALJ finds the claimant has limitations in CPP, but does not account for those in the RFC. The Mascio court held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638. However, the Mascio court went on to state that "the ALJ may find that the concentration, persistence, or pace limitation does not affect [claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." Id. That is exactly what the ALJ did in Ms. Elrod's RFC determination. First, the ALJ determined that Ms. Elrod had moderate difficulties in CPP. (Tr. at 15.) The ALJ further stated:

> The claimant reported she can pay attention for one hour. She indicated she follows written and spoken instructions very well. However, the claimant also reported she has problems with memory and concentration (Exhibit 8E).

Id. Unlike the ALJ in Mascio, here, the ALJ did explain how she incorporated Ms. Elrod's limitations in CPP by including the limitation that she can "understand, remember, and carry out routine instructions" in the RFC. (Id. at 16.) To support

this construction of the limitation, the ALJ pointed to evidence demonstrating that Ms. Elrod could perform a wide variety of activities of daily living and had no deficits in CPP beyond those set forth in the RFC. Specifically, Ms. Elrod self-reported that she could perform her own personal care, do her own laundry, and that she prepared meals with her mother and helped her mother care for her house and yard. (Id. at 15, 299-300.) Additionally, Ms. Elrod indicated that she could pay attention for one hour, and that she understood written and spoken instructions "very well." (Id. at 15 (referencing id. at 303).) Moreover, a third-party function report related that Ms. Elrod could pay attention for several hours. (Id. at 20 (referencing id. at 287).) The record also indicates that Ms. Elrod went outside everyday alone; could shop for groceries, clothing and household goods; regularly went to church; and paid her own bills, counted change, handled a savings account and could use a check book/money order. (Id. at 15 (referencing id. at 301-02).) Ms. Elrod also self-reported that she finished what she started and spent time with others daily. (Id. at 302-03.) Her assertions of disabling limitations in CPP are inconsistent with this evidence. Furthermore, the medical evidence to which Ms. Elrod references in support of her objection to the RFC is that of Dr. Bradford. As explained supra, the ALJ described why she did not find Dr. Bradford's determination persuasive. Thus, Ms. Elrod's objection on this issue is overruled.

II.

For the reasons stated herein, the Court adopts the United States Magistrate Judge's Memorandum Opinion and Recommendation [Doc. #14]. **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] is **DENIED**, Defendant's Motion for Judgment on the Pleadings [Doc. #12] is **GRANTED**, and the action is **DISMISSED WITH PREJUDICE**.

This the 23rd day of March, 2018.

Senior United States District Judge